ARNOLDO CASILLAS, ESQ., SBN 158519
CASILLAS, MORENO & ASSOCIATES
3500 W. Beverly Blvd.
Montebello, CA 90640
Telephone:   (323) 725-0917
Facsimile:    (323) 725-0350
Email: acasillas@morenolawoffices.com

Attorneys for Plaintiffs,
ESTATE OF ANDY LOPEZ, by and
through successors in interest, RODRIGO
LOPEZ and SUJAY CRUZ, and
RODRIGO LOPEZ and SUJAY CRUZ,
individually.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ANDY LOPEZ, BY AND THROUGH SUCCESSORS IN INTEREST, RODRIGO LOPEZ AND SUJAY CRUZ, AND RODRIGO LOPEZ AND SUJAY CRUZ, INDIVIDUALLY,<br><br>　　　　　Plaintiffs,<br><br>　　　vs.<br><br>ERICK GELHAUS, COUNTY OF SONOMA, DOES 1 THROUGH 10, INCLUSIVE,<br><br>　　　　　Defendants.<br>_____ | **Case Number: 13-cv-05124-PJH**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1.　Unreasonable Seizure (42 U.S.C. § 1983);<br>2.　Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983);<br>3.　Substantive Due Process Violation (42 U.S.C. § 1983);<br>4.　 Wrongful Death<br>5.　 Survivorship<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW PLAINTIFFS ESTATE OF ANDY LOPEZ, by and through successors in interest, RODRIGO LOPEZ and SUJAY CRUZ, and RODRIGO LOPEZ and SUJAY CRUZ, individually, and allege as follows:

////

## INTRODUCTION

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Andy Lopez by deputy Erick Gelhaus and to establish the violations of fundamental rights under the United States Constitution in connection with the shooting and killing of Andy Lopez on October 22, 2013.

2. Andy Lopez was a dynamic and vibrant boy. His death has been a profound and unimaginable loss to his parents, the present plaintiffs Rodrigo Lopez and Sujay Cruz.

3. Without cause or provocation Erick Gelhaus shot and killed Andy Lopez on October 22, 2013, as he walked along a rural residential neighborhood sidewalk. The shooting was absolutely unjustified and it is plaintiffs' goal here to show that the killing of Andy Lopez was a senseless and unwarranted act of police abuse.

## PARTIES

4. At all relevant times, Andy Lopez ("decedent") was an individual residing in Sonoma County, California. The claims made by the ESTATE OF ANDY LOPEZ, are brought by Rodrigo Lopez and Sujay Cruz, the successors in interest to the Estate of Andy Lopez pursuant to California Code of Civil Procedure § 377.32.

5. Plaintiffs Rodrigo Lopez and Sujay Cruz are and were, at all times relevant hereto, residents of Sonoma County, and are the natural father and mother of decedent Andy Lopez.

6. Defendant SONOMA COUNTY (hereafter, "COUNTY"), is and, at all times mentioned herein, was a public entity, duly organized and existing under and by virtue of the laws of the state of California, with the capacity to sue and be sued. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for

1        assuring that the actions, omissions, policies, procedures, practices and customs
2        of its employees complied with the laws and the Constitutions of the United
3        States and of the State of California.
4  7.     The Sonoma County Sheriff's Office (hereinafter "SCSO") is a subdivision of
5        defendant Sonoma County.
6  8.     Defendant GELHAUS is a deputy sheriff working for the SCSO. He is sued in
7        his official and individual capacity. At all times relevant to the present action,
8        defendant GELHAUS was acting under the color of law, to wit, under the color
9        of the statutes, ordinances, regulations, policies, customs, and usages of
10       defendant COUNTY and the SCSO, as well as under the color of the statutes and
11       regulations of the State of California.
12  9.     At all relevant times, each of DOES 1 through 10 were employees of the SCSO.
13       At all times relevant herein, each of DOES 1 through 10 was an employee and/or
14       agent of defendant COUNTY and he or she acted under color of law, to wit,
15       under the color of the statutes, ordinances, regulations, policies, customs, and
16       usages of Defendant COUNTY and the SCSO, as well as under the color of the
17       statutes and regulations of the State of California.
18  10.    At all relevant times, each of the Defendants DOES 1 through 10 was acting
19       within his or her capacity as an employee, agent, representative and/or servant of
20       COUNTY and are sued in their individual capacities.
21  11.    On information and belief, at all relevant times, defendants GELHAUS and
22       DOES 1 through 10, inclusive, were residents of Sonoma County, California.
23  12.    The true names of defendants DOES 1 through 10, inclusive, are unknown to
24       Plaintiffs, who therefore sues these defendants by such fictitious names.
25       Plaintiffs will seek leave to amend this complaint to show the true names and
26       capacities of these defendants when they have been ascertained. Each of the
27 ////
28       fictitious named defendants is responsible in some manner for the conduct and

1      liabilities alleged herein.

2  13. Each of the Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' and decedent's rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control.  Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained.  Each of the Defendants is the agent of the other.

**JURISDICTION AND VENUE**

14. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b), because defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, Sonoma County, California.

////

////

16. With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this

1  court exercise supplemental jurisdiction over such claims as they arise from
2  the same facts and circumstances which underlie the federal claims.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 16 of this Complaint with the same force and effect as if fully set forth herein.

18. Andy Lopez was born on June 20, 2000, and was he was 13 years old, at the time of his death. He was five feet, three inches tall and weighed 140 pounds. In all respects he appeared to be a 13-year-old boy.

19. Defendant GELHAUS was a long-time member of the SCSO.

20. On Tuesday, October 22, 2013, at approximately, 3:15 p.m., Andy Lopez was walking along the sidewalk on Moorland Avenue near W. Robles Avenue in Sonoma County. Andy Lopez was carrying an airsoft-type toy rifle in his left hand at his side. He was returning the toy to a friend.

21. At least two persons traveling along Moorland Avenue who observed Andy Lopez observed that he was a boy and that he was carrying a toy.

22. As Andy Lopez walked alone along the sidewalk, he was adjacent to a large vacant lot to his left. There were no other persons in his immediate vicinity. He was not acting in an unusual, dangerous or otherwise suspicious manner.

23. As he walked northbound along the sidewalk, he was seen by two Sonoma County Sheriff's deputies traveling northbound in a marked SCSO patrol car along Moorland Avenue. Defendant GELHAUS was the front passenger in the patrol car. The two deputies had stopped at the intersection of Moorland Avenue and W. Robles Avenue when they made their initial observations of Andy Lopez.

24. The deputies then sped toward Andy Lopez and stopped their patrol car in the southbound lane of Moorland Avenue within 35 feet of Andy Lopez. As they came to a stop, the deputies could tell that Andy Lopez was a young teenager.

5

|   |     |   |
|---|-----|---|
| 1 |     | As the vehicle stopped, one of the deputies shouted out one command to Andy Lopez from within the patrol car. The deputies did not identify themselves as police officers. |
| 4 | 25. | The deputies knew that upon hearing their command, Andy Lopez would turn to face them. |
| 6 | 26. | As their patrol car came to a stop, the two deputies opened their doors and simultaneously stepped out of the patrol car as it came to a stop. They both drew their sidearms and pointed them at Andy Lopez. |
| 9 | 27. | As they did so, Andy Lopez turned to his right in response to their command. The toy gun was at his side. |
| 11 | 28. | As Andy Lopez was in turning to his right, defendant GELHAUS fired his pistol at Andy Lopez. |
| 13 | 29. | From the time that the deputies called out to Andy Lopez until the time that GELHAUS fired his first shot, only three seconds elapsed. |
| 15 | 30. | The first bullet that was fired hit Andy Lopez and he fell to the ground immediately. Defendant GELHAUS continued to fire at Andy Lopez as he lay on the ground. |
| 18 | 31. | Defendant GELHAUS shot indiscriminately with several shots missing Andy Lopez and striking a nearby home. |
| 20 | 32. | Prior to being shot, Andy Lopez was unaware that the deputies were present. |
| 21 | 33. | Prior to being shot, Andy Lopez did not make any threatening gestures or movements. |
| 23 | 34. | The gunshots that struck Andy Lopez caused him great pain and suffering. Some time after being shot, he died on the sidewalk. |
| 25 | 35. | Andy Lopez was a kind and charismatic boy who was loved by his family and friends. His parents, the present plaintiffs, enjoyed a strong and meaningful relationship with their son that was full of love. |
| 28 | 36. | Defendant COUNTY and its SCSO were long aware of the propensity of |

defendant GELHAUS to recklessly draw his firearm and to use excessive force:

   a. As far back as 1996, GELHAUS demonstrated unfitness to work as a peace officer when he responded to a call involving Karin Futch. Upon arriving at her home in response to a neighbor dispute she reported, he pulled his firearm and pointed it at Ms. Futch who was carrying her young son. He chased her around her vehicle causing her great fear and anxiety.

   b. In about 1996 also, GELHAUS and his then partner were accused of falsifying police reports in a domestic violence matter. GELHAUS' partner was fired for the misconduct.

   c. In October of 2013, GELHAUS made a routine traffic stop of Jeffrey Westbrook and recklessly and frantically pointed his pistol at Mr. Westrook's head while he sat in his car.

   d. In 1995, GELHAUS shot himself in the leg during a stop and search involving a teenager.

37. Defendant COUNTY was also aware that defendant GELHAUS had racist and extremist tendencies and beliefs. Defendant GELHAUS regularly attended and was an instructor at a shooting academy whose founder held extremist, homophobic, racist and separatist views. Defendant GELHAUS, as a firearms instructor for defendant COUNTY and the SCSO recommended that other SCSO deputies attend the same academy. Defendant GELHAUS wrote and blogged about his affiliation with the academy and of his admiration for the founder of the academy. Defendant GELHAUS bought and read books which contained racist, separatist and extremist musings and commentary. Defendant COUNTY was aware of defendant GELHAUS's affiliation with this academy.

38. Defendant GELHAUAS was a regular contributor to on-line shooting and

7

|   |     |   |
|---|---|---|
| 1 |   | firearm tactics magazines, blogs and other electronic forums.  There, he |
| 2 |   | instructed and advised others on the use of questionable tactics, including |
| 3 |   | recommendations as to how an officer must respond to justify shooting a kid |
| 4 |   | with toy gun. |
| 5 | 39. | Not surprisingly, after wrongfully shooting and killing Andy Lopez, defendant |
| 6 |   | GELHAUS recognized that his on-line postings and commentary would tend |
| 7 |   | to show that he held extremist views, used bad tactics and had a tendency to |
| 8 |   | use excessive force.  Accordingly, he immediately attempted to erase, conceal |
| 9 |   | and otherwise destroy evidence of his racist, separatist and extremist beliefs. |
| 10 |   | He wrongfully erased his on-line commentary, postings in chat-rooms, and |
| 11 |   | other writings in an effort to conceal his beliefs. |
| 12 | 40. | Prior to his encounter with Andy Lopez, defendant GELHAUS regularly |
| 13 |   | patrolled the area which included the intersection of Moorland Avenue near |
| 14 |   | W. Robles Avenue.  Defendant GELHAUS was familiar with the vacant lot at |
| 15 |   | the northwest corner of Moorland Avenue and W. Robles Avenue, and he |
| 16 |   | was aware that children regularly played there.  Andy Lopez and his friends |
| 17 |   | regularly played there, including with their toy/airsoft guns. |
| 18 | 41. | PLAINTIFFS have complied with the claim presentation requirements of the |
| 19 |   | California Government Code.   These claims were rejected by operation of |
| 20 |   | law. |

21 ////
22 ////
23 ////
24 ////
25 ////
26 ////
27 ////
28 ////

**FIRST CLAIM FOR RELIEF**

**Unreasonable Seizure**

**42 U.S.C. § 1983**

**Against Defendant Erick Gelhaus**

42. Plaintiff Estate of Andy Lopez, by and through successors in interest, Rodrigo Lopez and Sujay Cruz, repeats and re-alleges each and every allegation in paragraphs 1 through 33 of this Complaint with the same force and effect as if fully set forth herein.

43. At the time that Andy Lopez was shot, he was not engaging in, nor had he engaged in, any assaultive or threatening conduct. He posed no danger or threat to defendant Gelhaus or anyone else. The shooting and killing of Andy Lopez was unreasonable under the circumstances in every respect.

44. When defendant Gelhaus shot and killed Andy Lopez, he violated Andy Lopez' right to be free from unreasonable seizures as guaranteed under the Fourth Amendment to the United States Constitution.

45. GELHAUS' shooting and killing of Andy Lopez was willful and done with a deliberate disregard for the rights and safety of Andy Lopez and, therefore, warrants the imposition of punitive damages as to defendant Gelhaus.

**SECOND CLAIM FOR RELIEF**

**Municipal Liability for Unconstitutional**

**Customs and Practices**

**42 U.S.C. § 1983**

**Against Defendants SONOMA COUNTY and DOES 1 through 10**

46. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as though fully set forth herein.

47. On and before October 22, 2013 and prior to the shooting of Andy Lopez, Defendant SONOMA COUNTY and DOES 1 through 10 were aware that

9

Defendant GELHAUS had engaged in a custom and practice of reckless and dangerous use of firearms and other misconduct, as summarized above in paragraph 37.

48. Defendants SONOMA COUNTY and DOES 1 through 10, acting with deliberate indifference to the rights and liberties of the public in general, and of the present plaintiffs and decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied customs and practices of:

   a. Encouraging, accommodating, or ratifying shootings of citizens; the use of excessive and unreasonable force, including deadly force;

   b. Encouraging, accommodating, or facilitating a "code of silence" among SCSO deputies and supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up.

   c. Employing and retaining, as deputy sheriffs and other personnel, individuals such as defendant GELHAUS, who said defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens;

   d. Inadequately supervising, training, controlling, assigning, and disciplining COUNTY sheriffs deputies, including defendant Gelhaus who said defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

   e. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by deputies, and

   f. By failing to discipline SCSO deputies for misconduct, including, but not limited to, unlawful detention, excessive force and false reports.

49. By reason of the aforementioned customs and practices, Andy Lopez was severely injured and subjected to pain and suffering and lost his life.

50. Defendants COUNTY and DOES 1 through 10 together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such customs and practices. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of decedent, Plaintiffs, and other individuals similarly situated.

51. The policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind the injuries of decedent and Plaintiffs.

52. By reason of the aforementioned acts and omissions Andy Lopez was killed and his parents suffered the loss of his love, affection, society and moral support.

53. Accordingly, Defendant COUNTY and DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

**THIRD CLAIM FOR RELIEF**

**Interference with Familial Integrity**

**Substantive Due Process Violation**

**42 U.S.C. § 1983**

**Against Defendants GELHAUS, Sonoma County,**

**and DOES 1 through 10**

54. Plaintiffs Rodrigo Lopez and Sujay Cruz repeat and re-allege each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

////

////

55. The present claim is brought pursuant to 42 U.S.C., section 1983, for violation of the right of familial integrity guaranteed by the Fourteenth Amendment of the U.S. Constitution.

56. As alleged above, the shooting of Andy Lopez was unreasonable under the circumstances of the encounter between Andy Lopez and Defendant GELHAUS. As such, the shooting and killing of Andy Lopez violated the constitutional limits on police use of deadly force; i.e., the Fourth Amendment's limits on unreasonable seizures.

57. At the same time, the shooting and killing of Andy Lopez by GELHAUS violated the rights of Rodrigo Lopez and Sujay Cruz to be free from police interference in their relationship with their son, Andy Lopez.

58. The unreasonable conduct of GELHAUS was the direct and proximate cause of the death of Andy Lopez. As a result of the unreasonable conduct of GELHAUS, plaintiffs Rodrigo Lopez and Sujay Cruz lost their son Andy Lopez as well as his love, affection, society and moral support.

59. GELHAUS's shooting and killing of Andy Lopez was willful and done with a deliberate disregard for the rights and safety of Andy Lopez and therefore warrants the imposition of punitive damages as to defendants Gelhaus.

60. GELHAUS' shooting and killing of Andy Lopez was willful and done with a deliberate disregard for the rights of Rodrigo Lopez and Sujay Cruz and therefore warrants the imposition of punitive damages as to defendant GELHAUS.

////
////
////
////
////
////

## FOURTH CLAIM FOR RELIEF

### Wrongful Death

### By Plaintiffs Rodrigo Lopez and Sujay Cruz,

### and Against Defendants GELHAUS,

### Sonoma County, and DOES 1 through 10

61. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

62. Defendants GELHAUS, while working as a deputy of the County of Sonoma Sheriff's Department, and acting within the course and scope of his duties, employed negligent tactics and intentionally and/or without due care shot Andy Lopez. The shooting resulted as a result of defendant GELHAUS's unsafe, improper and negligent tactics. As a result of these intentional acts and negligence, Andy Lopez suffered serious injuries, and ultimately died. GELHAUS had no legal or reasonable justification for this shooting.

63. As a direct and proximate result of GELHAUS's conduct as alleged above, Andy Lopez died. Plaintiffs have been deprived of the life-long comfort, society and care of Andy Lopez, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also were forced to pay funeral and burial expenses as a result of the conduct of GELHAUS.

64. Defendant County of Sonoma is vicariously liable for the wrongful acts of GELHAUS pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

65. As a proximate result of the acts and omissions of GELHAUS, Andy Lopez was shot and killed as alleged herein above.

66. Defendant GELHAUS received inadequate training from the Sonoma County Sheriff's Department in the proper use of firearms and tactics. As a direct and

proximate result of this failure to provide adequate firearms and tactics training to defendant GELHAUS, the shooting of Andy Lopez occurred, causing the present plaintiffs the losses and injuries herein complained of.

67. At no time, either prior to the employment of GELHAUS, or to the assignment of this defendant to duties whereby it was foreseeable that said defendant would be required to use his firearms, did defendant County of Sonoma take reasonable steps to ascertain whether he was psychologically capable of performing such duties and whether he had a propensity towards violence or toward over-reaction in typical encounters with the public.  To the contrary, defendant County of Sonoma was aware of various instances where defendant Gelhaus unnecessarily and recklessly drew his firearm.   Despite knowledge of such propensity, the County of Sonoma failed to take action to discipline or train officer Gelhaus to correct this propensity.  Instead, the County of Sonoma carelessly allowed him to continue to encounter members of the public in the course of his duties.  As a direct and proximate result of this failure to use due caution and care in the selection, training, and retention of defendant GELHAUS, the shooting of Andy Lopez occurred, causing the present plaintiffs the losses and injuries herein complained of herein.

68. The County of Sonoma also negligently retained GELHAUS, when it was known or should have been known by the County of Sonoma that defendant Gelhaus had on prior occasions used excessive force, had unjustifiably drawn his firearm and was previously misfired his firearm.

69. The County of Sonoma also negligently retained GELHAUS and negligently allowed him to continue to have contact with the public when it knew, or should have known, that he suffered from vision problems that impaired his ability to discern objects and actions at a distance.  Defendant GELHAUS admitted to this visual impairment and even took measure to adjust his firearm

sights to adjust for his vision problems.   He wrote about this vision problem and offered advice to others as to how to compensate for such problems.

70. At the time of the shooting of Andy Lopez by defendant GELHAUS, defendants County of Sonoma and DOES 1 through 10 negligently and carelessly had in place, and had ratified customs and practices which permitted their Sheriffs deputies while on duty and while off duty to shoot persons unjustifiably, unreasonably and in violation of their civil rights.

71. Said policies, procedures, customs and practices also called for defendants County of Sonoma and DOES 1 through 10 not to meaningfully discipline, prosecute or in any way deal with or respond to known incidents, complaints, of misuse of firearms and excessive force by deputies of the County of Sonoma Sheriffs  Department.

72. Said defendants negligently and carelessly maintained an inadequate system of firearms discharges which failed to identify instances of improper use of firearms, as well as defendants' failure to more closely supervise or retrain deputies, such as GELHAUS, who in fact improperly used their weapons.

73. Other systemic deficiencies which indicated, and continue to indicate, a careless disregard by defendants County of Sonoma and Doe Defendants 1 through 10 to the violations of the civil rights by the deputies of the Sonoma Sheriffs Department include;

   a. preparation of investigative reports designed to vindicate the use of firearms, regardless of whether such use was justified,

   b. preparation of investigative reports which uncritically rely solely on the word of Sheriffs deputies involved in the shooting incidents and which systematically fail to credit testimony by non-Sheriffs witnesses,

   c. preparation of investigative reports which omit factual information and physical evidence which contradicts the accounts of the deputies involved, and,

      d.    issuance of public statements exonerating deputies involved in such incidents prior to the completion of investigations of the shootings.

74. Said negligent customs and practices of defendants County of Sonoma and DOES 1 through 10 evidenced a deliberate indifference to the unnecessary shooting of persons such as Andy Lopez by the failure to change, correct, revoke, or rescind said customs and practices, and tactic and weapons training in light of prior knowledge by said defendants of indistinguishably similar incidents of contact with persons who are mentally or emotionally unstable, emotionally distraught and otherwise psychologically incapacitated where tactics and firearms use caused death or serious bodily injury to such persons.

75. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants and such caused the defendant deputies to be unaware of the rules and laws governing permissible use of firearms while on duty and off duty and to believe that firearms discharges are entirely within the discretion of the officer and that improper discharges would not be honestly and properly investigated, all with the foreseeable result that defendants' deputies would use deadly force in situations where such force is neither necessary, reasonable nor legal, thereby violating the civil rights of the citizens of this state.

76. As a result of the aforementioned negligent and intentional acts, omissions, systematic deficiencies, customs and practices of defendants County of Sonoma and DOES 51 through 100 and their Sheriffs Department, the present defendant deputies, shot plaintiff Andy Lopez without justification, thereby killing him.

77. As a further result of the aforementioned negligent and intentional acts, omissions, systematic deficiencies, customs and practices of defendants County of Sonoma, defendant GELHAUS, the present plaintiffs have lost the love, affection, society and moral support of Andy Lopez.

## FIFTH CLAIM FOR RELIEF

### Survivorship

### By the Estate of Andy Lopez

### Against Defendants GELHAUS and DOES 1 through 10

78. Plaintiff Estate of Andy Lopez realleges as though fully set forth at length here and incorporate herein by reference, all of the allegations and statements contained above in paragraphs 1 through 77.

79. Plaintiffs Rodrigo Lopez and Sujay Cruz are the legal heirs and successors in interest of Andy Lopez, and the present claim is brought by them as the legal heirs and successors in interest of Andy Lopez as permitted by Sections 377.30 et seq. of the California Code of Civil Procedure.

80. On October 22, 2013, Andy Lopez was shot by defendant GELHAUS and causes of action arose in his favor before he died. He would have been a plaintiff in this action, had he survived the injuries he sustained in the shooting underlying this action.

81. On October 22, 2013, and for a measurable period of time before the death of Andy Lopez, personal property of his was damaged or destroyed, and while alive said decedent had valid claims and causes of action to recover damages for, among other things, personal property damage, and prejudgment interest as allowed by law and costs of suit.

82. The conduct of all the defendants as herein set forth above was tortious in that, among other things, defendant GELHAUS deliberately shot Andy Lopez without cause or justification, or otherwise contributed to the shooting as spelled out herein above. Said conduct was the direct and proximate cause of the damages suffered by decedent Andy Lopez, as alleged above, which were sustained and incurred for a measurable period of time by him before his death. Plaintiffs Rodrigo Lopez and Sujay Cruz, therefore, seek recovery for personal property damages, and all other related expenses, damages, and losses, including punitive damages, as permitted by

17

section 377.34 of the Code of Civil Procedure, against the present defendants, according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

A. For compensatory damages in the amount to be proven at trial;

B. For punitive damages against defendant GELHAUS in an amount to be proven at trial;

C. For interest;

D. For reasonable costs of this suit and attorneys' fees, including attorneys fees pursuant to 42 U.S.C. § 1988; and;

E. For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

Dated: June 20, 2014   CASILLAS, MORENO & ASSOCIATES

By /s/ *Arnoldo Casillas*
ARNOLDO CASILLAS
ATTORNEY FOR PLAINTIFFS
ESTATE OF ANDY LOPEZ, RODRIGO LOPEZ, SUJAY CRUZ

**DEMAND FOR JURY TRIAL**

COME NOW PLAINTIFFS ESTATE OF ANDY LOPEZ, RODRIGO LOPEZ, and SUJAY CRUZ and demand a trial by jury.

Dated: June 20, 2014          CASILLAS, MORENO & ASSOCIATES

By  /s/ *Arnoldo Casillas*
ARNOLDO CASILLAS
ATTORNEY FOR PLAINTIFFS
ESTATE OF ANDY LOPEZ, RODRIGO LOPEZ, SUJAY CRUZ